397 So.2d 358 (1981)
The TRAVELERS INSURANCE COMPANY, a Foreign Corporation, Appellant,
v.
C. Holley SPENCER, Appellee.
No. UU-351.
District Court of Appeal of Florida, First District.
April 10, 1981.
Rehearing Denied May 14, 1981.
*360 Philip A. Bates of Emmanuel, Sheppard & Condon, Pensacola, for appellant.
Jack Locklin, Jr., and T. Sol Johnson of Johnson, Green & Westmoreland, Milton, for appellee.
ERVIN, Judge.
In this declaratory judgment action, Travelers Insurance Company appeals a summary judgment entered against it which determined that appellee had uninsured motorist (UM) coverage with Travelers in an amount equal to the bodily injury (BI) liability coverage available to him under the terms of his partnership policy. We affirm.
In May, 1977, C. Holley Spencer suffered an accident while driving his son's vehicle  a vehicle which had not been listed in his partnership policy. The other vehicle involved in the accident had liability limits of only $10,000, so Spencer sought underinsured motorist benefits through his partnership's policy. The policy carried $300,000 liability limits, but provided that UM coverage was $15,000 per person.
Travelers first contends that Spencer is not entitled to UM coverage under the terms of his partnership policy because such coverage extends only to vehicles listed in the policy. The policy, however, designates Holley Spencer, together with the other partners, as a named insured. A named insured is designated by the rule in Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971), as a class one insured (i.e., the named insured, his spouse and any relative who was a resident of the same household), and such insureds are entitled to UM coverage "whenever or wherever bodily injury is inflicted upon [them] by the negligence of ... uninsured [or underinsured] motorist[s]." 252 So.2d at 238. Therefore, any provision in an insurance policy attempting to limit a named insured's right to UM benefits only as to automobiles listed in his policy must be condemned as contrary to the public policy as expressed in Section 627.727(1).
Travelers next argues that the lower court erred in granting summary judgment against it because there remained unresolved material issues of fact on the question whether the named insured rejected UM coverage in an amount less than that purchased by him for BI liability protection. While the Travelers agent did not obtain a written rejection of a lesser amount of UM coverage, he nevertheless testified that he had received an oral rejection, which may, under appropriate circumstances, satisfy the statute's requirements. See Glover v. Aetna Insurance Co., 363 So.2d 12 (Fla. 1st DCA 1978). The agent stated that it was his general practice to offer UM coverage in accordance with the statute, and, while he was sure that he had discussed with the named insured his right to reject, this statement was qualified by his responses that he could not recall any instance when he had done so. On the other hand, Spencer denied that he had ever rejected UM coverage in any such lesser sum, and in fact had assumed before the accident that his UM limits equaled his BI limits.
The focal question before us is what type of evidence is sufficient to raise a genuine issue of material fact as to whether the insurer has met Section 627.727(1)'s requirement of offering UM coverage in an amount no "less than the limits of bodily injury liability insurance purchased by the named insured,..."? When a statute commands that its provisions can only be met by following a specific method, and the evidence reveals that its requirements were not observed, summary judgment is appropriately entered because the controversy is considered one of law, and not one involving a disputed issue of material fact. See *361 Richmond v. Florida Power & Light Co., 58 So.2d 687 (Fla. 1952); Duprey v. United Services Auto Ass'n., 254 So.2d 57 (Fla. 1st DCA 1971). For example, in Locke v. Stuart, 113 So.2d 402 (Fla. 1st DCA 1959), summary judgment was held appropriately granted upon facts showing that a tax deed had incorrectly been issued due to the clerk's failure to forward notice to the former owner of the land stating that the property was being or would be advertised and sold for taxes, as required by Section 194.18, Florida Statutes (1957). We concluded that once "it was shown without contradiction that the clerk failed to give notice as required by the statute, it follows that there was no issue of fact for determination by a jury." 113 So.2d at 404.
Similarly, in the case at bar, no disputed issue of material fact remained undetermined. Section 627.727(1) has uniformally been interpreted as requiring nothing less than an affirmative, informed rejection by an insured of his right to UM protection. Bernstein v. Liberty Mutual Ins. Co., 294 So.2d 63 (Fla. 3d DCA 1974); Wilson v. National Indemnity Co., 302 So.2d 141 (Fla. 1st DCA 1974); Lumbermen's Mut. Cas. Co. v. Beaver, 355 So.2d 441 (Fla. 4th DCA 1978); American Motorist's Ins. Co. v. Weingarten, 355 So.2d 821 (Fla. 1st DCA 1978). The statute's requirements are not met if the agent's knowledge of rejection is founded only upon his general, routine office practice, and not upon an independent recollection of a specific rejection. See Bernstein v. Liberty Mutual Ins. Co., supra, and American Motorist's Ins. Co. v. Weingarten, supra. The agent's testimony in the instant case does not comply with the high statutory duty imposed upon insurers that they specifically obtain an understanding rejection of UM limits in lesser limits than those available for bodily injury protection.
Finally, the appellant argues that the lower court erroneously entered summary judgment against it because there remained a material issue of fact as to whether the plaintiff, by not raising any objection to the UM coverage as issued for an eleven-year period prior to his accident, was estopped from now asserting that his UM coverage should be the equivalent afforded under the BI liability portion of the policy. It bases this contention upon the insured's testimony that although the insured had required $300,000 of BI liability coverage for no less than 11 years prior to the accident, he never raised any issue that his UM limits of $15,000 were inadequate until after he was injured in the accident of May, 1977.
We disagree that estoppel and waiver are viable defenses to this type of action. The doctrines of estoppel and waiver do not in general apply to transactions that are forbidden by statute or are contrary to the public policy. Sherba Bros., Inc. v. Campbell, 361 So.2d 814 (Fla. 4th DCA 1978); Confederation Life Association v. Conte, 254 So.2d 45 (Fla. 3d DCA 1971); State v. City of Hialeah, 156 So.2d 675 (Fla. 3d DCA 1963); Montsdoca v. Highlands Bank and Trust Co., 95 So. 666 (Fla. 1923). Moreover, an omission sufficient to imply the doctrine of equitable estoppel means negligent or culpable omission in instances where the party failing to act is under a duty to do so, but, in the absence of such a duty, silence or inaction will not operate to work an estoppel. Pasco County v. Tampa Development Corp., 364 So.2d 850 (Fla. 2d DCA 1978); Thomas v. Dickinson, 158 Fla. 819, 30 So.2d 382 (1947).
Section 627.727(1), as construed by the Wilson-Weingarten line of cases, places no duty upon the insured to initiate a request for UM coverage in an amount equal to that provided in his policy for BI protection limits. The statute, rather, imposes a duty on the insurer to inform the insured of his statutory options so as to enable him to make an informed decision regarding the amount of UM protection, if any, he desires. We conclude that principles of common law estoppel and waiver cannot apply to bar an inactive, silent insured from his statutory right to UM coverage because those principles have since been superseded by the standard established by the statute, which requires *362 nothing less than an informed, affirmative rejection.
AFFIRMED.
LARRY G. SMITH and SHIVERS, JJ., concur.