PALMER, J.
The Town of Ponce Inlet appeals the portion of the non-final order entered by the trial court finding in favor of Pacetta, LLC., Down The Hatch, Inc., and Mar-Tim, Inc., (hereinafter collectively referred to as “Pacetta”) on their claim for damages under the Bert J. Harris, Jr. Private Property Rights Protection Act (Harris Act), *28 section 70.001, Florida Statutes (2009).[1] Determining that the trial court erred in finding Ponce Inlet liable to Pacetta under the Harris Act, we reverse.
In its order, the trial court set forth the following summary of the facts underlying this lawsuit:
[Pacetta has] assembled a piece of riverfront real property on the shores of the Halifax River in Ponce Inlet, Florida, consisting of approximately 16 acres. The congruent waterfront property and two small adjoining residential parcels were acquired by Pacetta LLC, Down the Hatch Inc., and Mar-Tim, Inc., between June 14, 2004 and May 10, 2006.
[[Image here]]
[Pacetta’s] claims assert that between June, 2004 and November 18, 2008, there had developed a beneficial relationship with the Town, its council, its planning department and, for the most part, with its citizens. In short summary, as a result of the communications and representations by and between the parties, a casual observer might conclude that a delightful mixed use planned waterfront development was to be approved by the Town sometimes referred to as the Villages of Ponce Park.
[[Image here]]
Nonetheless, approval for the project did require appropriate changes in the Comprehensive Land-Use Plan and land use development code regulations consistent with the discussions that the parties had over that long period of time.
[[Image here]]
[T]he Comprehensive Land-Use Plan was in its renewal cycle and submitted to the State for approval in early 2008. All of the extensive planning was done, approved, submitted and agreed to by the State subject to its objections, recommendations and comments. The approval of the Comprehensive Land-Use Plan would be the first step in any land development changes to allow for the mixed use that the parties had come to desire. The new comprehensive plan was amended to address the objections by the State so it was in a form that, upon final reading and approval, would have essentially been approved by the State and become final which was until 2008, the apparent intention of all concerned. In 2008, there was a referendum passed motivated by opposition to the project and the three commissioners were elected who had announced opposition to the project. In November of 2008, when the [Comprehensive Land-Use Plan] was up for its final approval, the plan as originally expected by [Pa-cetta] was defeated based on a vote of the outgoing council.
After the proposed 2008 amendment to Ponce Inlet’s Comprehensive Land-Use Plan was defeated, Pacetta filed suit against Ponce Inlet asserting several claims for relief, including a claim for damages under the Harris Act.
The Harris Act enables property owners to seek relief, which may include compensation for the actual loss to the fair market value of its real property caused by government action, when a “specific action of a governmental entity has inordinately burdened ... a vested right to a specific use of real property”. § 70.001(2). The Act defines the term “action of a governmental entity” as meaning “a specific ac *29 tion of a governmental entity which affects real property”. § 70.001(3)(d). The Act further defines the term “inordinate burden” as meaning, inter alia, government action that restricts or limits a vested right to a specific use of the property. § 70.001(3)(e). A vested right can be established through the application of the principle of equitable estoppel. § 70.001(3)(a).
The matter proceeded to a non-jury trial. Upon review of the evidence presented, the trial court entered judgment in favor of Pacetta, holding:
[Pacetta has] established by equitable estoppel a vested right to have the Town include in its Comprehensive Land-Use Plan dealing with the 16 acre Pacetta Group property the terms originally approved upon first reading [of the 2008 amendment to the Comprehensive Land-Use Plan].
This appeal timely followed.
Ponce Inlet argues that the trial court erred, as a matter of law, in granting Pacetta relief under the Harris Act on the basis of equitable estoppel. We agree.
A trial court’s legal conclusions, reached following a non-jury trial, are reviewed de novo. Acoustic Innovations, Inc. v. Schafer, 976 So.2d 1139, 1143 (Fla. 4th DCA 2008).
In order to prevail on its Harris Act claim, Pacetta was required to prove that an action by Ponce Inlet constituted an inordinate burden to a vested right regarding the use of its properties. The trial court concluded that Pacetta sustained its burden of proof because Pacetta’s vested right to develop its properties, as negotiated by the parties, was created by the application of the principle of equitable estoppel.
In Citrus County v. Halls River Development, Inc., 8 So.3d 413 (Fla. 5th DCA 2009), our court explained the principle of equitable estoppel as follows:
The doctrine of equitable estoppel may be invoked against a governmental body when a property owner (1) relying in good faith (2) upon some act or omission of the government (3) has made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights that the owner has acquired. Verizon Wireless Pers. Commc’ns, L.P. v. Sanctuary at Wulfert Point Cmty. Ass’n, 916 So.2d 850, 856 (Fla. 2d DCA 2005). However, estoppel should be invoked against the government only in exceptional circumstances. Watson Clinic, LLP v. Verzosa, 816 So.2d 832, 834 (Fla. 2d DCA 2002). And, most importantly, the doctrine of estoppel does not generally apply to transactions that are forbidden by law or contrary to public policy. Montsdoca v. Highlands Bank & Trust Co., 85 Fla. 158, 95 So. 666, 668 (1923); Dade County v. Gayer, 388 So.2d 1292, 1294 (Fla. 3d DCA 1980).
Id. at 421-22. We then analyzed the principle as applied to a Harris Act claim.
In that case, Citrus County appealed the trial court’s order determining that the County was liable under the Harris Act because it had inordinately burdened real property owned by Halls River Development, Inc. Of relevance to the instant appeal, Citrus County’s Comprehensive Plan originally designated the property at issue as being mixed use (MXU), which permitted construction of multifamily condominiums. However, the County later amended its Comprehensive Plan, changing the property’s classification from MXU to Low Intensity Coastal and Lakes (CL), which restricted development to one unit per twenty acres of real property. Four years after the County amended its Comprehen *30 sive Plan, Halls River purchased the property at issue, and received government assurances that development of a condominium complex was a proper use for the property. Opponents of Halls River’s condominium development plan filed a petition for a writ of prohibition seeking to prohibit the County from approving any project on the Halls River property that was not authorized under its CL designation. The trial court granted the petition, ruling that Halls River’s plan to develop a condominium complex on the property was in violation of the law because the project was inconsistent with the County’s Comprehensive Plan. Halls River thereafter filed suit against the County, asserting a claim under the Harris Act. Halls River essentially claimed that the County’s refusal to approve its condominium development plan constituted an inordinate burden on its vested right to develop its property. Upon review, the trial court found the County liable. The County appealed, arguing that, since the MXU designation had been eliminated four years prior to the time Halls River acquired the property, equitable estoppel could not be applied to establish that Halls River had a vested right to develop its property as a condominium complex. Upon review, our court agreed with the County:
Halls River ... failed to establish a vested right to its intended use of the property based on a theory of equitable estoppel despite the County’s erroneous advice about the property’s permitted uses. The doctrine of equitable estoppel ... does not generally apply to transactions that are forbidden by law or contrary to public policy. Montsdoca v. Highlands Bank & Trust Co., 85 Fla. 158, 95 So. 666, 668 (1923); Dade County v. Gayer, 388 So.2d 1292, 1294 (Fla. 3d DCA 1980). That is the case here as the Plan, which enjoys legal primacy regarding allowable land uses, prohibited the property’s use as a multifamily condominium.
[[Image here]]
This case is based entirely on the fact that Halls River’s project does not comply with the Plan.... Inasmuch as the property maintained the CL designation since 1997, well before Halls River bought the property, Halls River never had a lawful right to the proposed use for a multifamily dwelling, the County staffs misadvice notwithstanding.
Id. at 421-22.
Here, Pacetta based its Harris Act claim on the similar theory that it had a vested right, through the application of the principle of equitable estoppel, to develop its properties as negotiated by the parties, notwithstanding the fact that such development would violate Ponce Inlet’s Comprehensive Land-Use Plan. However, as explained in Halls River, equitable estoppel can be invoked only when a property owner relies in good faith upon some government action. No such good faith reliance was established in this case. At the time Pacetta purchased its properties, Ponce Inlet’s Comprehensive Land-Use Plan expressly prohibited the type of development which Pacetta proposed for its properties. Any assurances by town officials that the Comprehensive Plan would be amended so as to authorize Pacetta’s development plans could not be relied upon in good faith by Pacetta, since town officials lacked the authority to unilaterally amend the Comprehensive Land-Use Plan. See § 163.3184(4),(15), Fla. Stat. (2009) (requiring any proposed change to Comprehensive Plans to be subject to approval by various government agencies). Recognition of a vested right based on assurances from town officials to amend the Comprehensive Land-Use Plan would also be in violation of public policy, in light of the public hearings and other government ap *31 provals required for Comprehensive Plan amendments. Id. Accordingly, the trial court’s order finding Ponce Inlet liable to Pacetta under the Harris Act is reversed.
REVERSED.
SAWAYA and EVANDER, JJ., concur.

. Appellate jurisdiction is proper pursuant to rule 9.130(a)(3)(C)(viii) of the Florida Rules of Appellate Procedure, which authorizes review of non-final orders determining "that a gov-emmental entity has taken action that has inordinately burdened real property within the meaning of [the Bert J. Harris, Jr. Private Property Rights Protection Act]”.